FILED

OCT 2 2 2013

THOMAS G. BRUTON
CLERK, U ● DISTRICT COURT

Date: October fourth, two-thousand thirteen

From: Alfred Gerebizza, General executor, General guardian, Beneficiary


To: Robert Geltleman, Nancy Temple, John George, Junior


Alleged case No. 10-CV-3051 in the Northern district of Illinois, Federal UNITED STATES, Eastern division


Declaration of Fact and Peremptory Rebuttal


This Declaration of Fact and Peremptory Rebuttal in alleged case no. 10-CV-3051 in the NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION FEDERAL COURT two hundred nineteen South Dearborn CHICAGO, Illinois states and rebutts presumptions of personam jurisdiction, subject matter jurisdiction and consent and states the following:

Presumptions

A presumption is an inference in favor of a particular fact; a rule of law, statutory or judicial, by which finding of a basic fact gives rise to existence of the presumed fact, until the presumption is rebutted. It is a device which operates in the absence of other proof to require that certain inference be drawn from the available evidence. A presumption is an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action. A presumption is not evidence. A presumption is either conclusive or rebuttable. Every rebuttable

under reserve with the copy claim
322502010 agent.
Not a cooporation but living soul
October tenth two thousand thirteen

presumption is either a presumption affecting the burden of producing evidence or a presumption affecting the burden of proof. A presumption impasses on the party against whom it is directed the burden of going forward with evidence to rebutt or meet the presumptions, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast. According to the case of Propeller Genesee Chief and 26 C.F.R. 72.11, it is evident that admiralty or maritime courts presume jurisdiction over commercial law. In commercial matters, a presumption means that the tryer of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its non-existence. A conclusive presumption is one in which proof of a basic fact renders the existence of the presumed fact conclusive and irrebuttable. A rebuttable presumption can be overturned upon the showing of sufficient proof. In general, all presumptions other than conclusive presumptions are rebuttable presumptions. Once evidence tending to rebut the presumption is introduced, the force of the presumption is entirely dissipated and the party with the burden of proof must come forward with evidence to avoid a directed verdict.

I hereby rebutt, refute, abrogate, and void signature nunc pro tunc, void, ab initio of agency presumptions or "unconscionable" instruments, including but not limited to Social Security, FICA, Voters Registration, Drivers License of U.C.C. 2-302 and any and all powers of attorney "without dishonor". There are no dejure certified, creditable or

under reserve with the copy claim

~~April~~ 322 50 2010 agent.

Not a corporation but living soul

October tenth two thousand thirteen

negotiable instruments within the administrative record which obligates or assents waiver of privilege and exemption to defacto agency action.

Please provide sworn, verified under penalties of perjury evidence, proof of claim to the following:

One. That a contract with wet ink signatures ever existed between the plaintiffs in case no. 10-CV-3051 and Alfred Gerebizza.

Two. That a contract existed between Draseena Funds Group Corp. and Alfred Gerebizza from two thousand to two-thousand ten.

Three. That a contract existed between Daniel Spitzer, Aneesard Management LLC, Arrow Fund LLC, Arrow Fund II LLC, Conservium Fund LLC, Kenzie Funds, Kenzie Financial Management, Inc., Kenzie Financial Services LLC, Nerium Currency Fund LP, Nerium Management Company, S Security Fund LLC, Senior Strength Q Fund LLC, Serano Unifico Ltd, Three Oaks Advanced Fund LLC, Three Oaks Currency Fund LP, Three Oaks Fund LP, Three Oaks Senior Strength Fund LLC, Three Oaks Fund 25 LLC, U.S. First Fund LLC, DN Management Co. and Alfred Gerebizza from two thousand to two-thousand nine.

Four. That the letter dated May first two thousand nine, from Priscilla M. Dragoi Zulicic, J.D. at KAMENSKY RUBENSTEIN HOCHMAN and DELOTT LLP does fully verify, refute and abrogate Alfred Gerebizza as Secretary and Director. EXHIBIT A

Five. That FORM BCA 1.15, STATEMENT OF CORRECTION of the Secretary of State Department of Business Services in section five, does not fully explain that errors in reporting by the keeper of records. KAMENSKY RUBENSTEIN HOCHMAN and DELOTT

under reserve with the copy claim

_[signature]_ 322502010    agent.

Not a corporation but living soul

October tenth two thousand thirteen

were made and generated automatically, and the officer/director information was overlooked. EXHIBIT B

Six. That the State of ILLINOIS computer system allowed amendments to the year two thousand.

Seven. That KAMENSKY RUBENSTEIN HOCHMAN and DELOTT LLP did not facilitate, implement and perform the sale and transfer in two thousand of all of Alfred Gerebizzas interests and ownership duties with Daniel Spitzer and any and all of his interests, indemnifying Alfred Gerebizza of any and all liabilities.

Eight. That the DOMESTIC CORPORATION ANNUAL REPORT does not fully disclose that Daniel H. Spitzer is the sole president, secretary and director of Draseena Funds Group Corp. EXHIBIT C

Nine. That the MOTION TO DISSOLVE PRELIMINARY INJUNCTION ORDER by Michael B. Brahman and Stuart M. Gimbel of KAMENSKY RUBENSTEIN HOCHMAN DELOTT LLP is case no. 01 D 86 in the NINETEENTH JUDICIAL CIRCUIT LAKE COUNTY, ILLINOIS does not fully disclose on page four, footnote one, that Alfred Gerebizza relinquished his ownership interest in Draseena long before two-thousand six.

Ten. That page two section four clearly states that Alfred Gerebizza's name does not appear on any of the Funds K-1 reports and references Affidavit of Rich Yasak as Exhibit A. See EXHIBIT D

Eleven. That the Affidavit of probable cause in alleged case no. 10-CR-651-2 in the NORTHERN DISTRICT of ILLINOIS, FEDERAL UNITED STATES EASTERN DIVISION, does not fully expose the sole ownership, management and control of All Draseena Funds Group

under reserve with the copy claim

322502010  agent.

Not a corporation but living soul

October tenth two thousand thirteen

Corp, all funds, including but not limited to Kenzie Funds,
Three Oaks Fund L.P., Three Oaks Advanced Fund, Nerium
Management, S Security Fund LLC, Nerium Currency Fund L.P.,
Kenzie Financial Management, Kenzie Financial Services et al
by AFFIANT Natalie Reda UNITED STATES POSTAL INSPECTOR clearly
stating that Daniel Spitzer was the sole owner with sole
controlling and managerial duties with sole liability and
ownership. See EXHIBIT E

Twelve. That Alfred Gerebizza received consideration from
Daniel Spitzer or any of the entities listed above.

Thirteen. That the MOTION TO DISSOLVE PRELIMINARY INJUNCTION
ORDER in case No. 01 D 86 by Daniel Spitzers attorney Michael
Brahman in paragraph eleven, does not fully state, that Alfred
Gerebizza was not involved in Draseena or the management of
the Funds. See EXHIBIT D

Fourteen. That paragraph eight of the same motion does not
fully describe the false allegations that are fully rebutted
here, but were not because of ineffective, incompetent,
reckless, and negligent counsel in the divorce proceedings,
and further rebutt any involvement by Alfred Gerebizza with
any of Daniel Spitzers entities or schemes. Rule 216 REQUEST
TO ADMIT is hereby rebutted.

Fifteen. That the Request to Admit allegedly served on
November two-thousand four, was not fully rebutted, but not
filed in the courts records because of ineffective,
incompetent, reckless, and negligent counsel. Request to
Admit is rebutted.

Sixteen. That the PRELIMINARY INJUNCTION ORDER was not fully
vacated by the NINETEENTH JUDICIAL CIRCUIT in LAKE COUNTY,

under reserve with the copy claim
322502010 agent
Not a corporation but living soul
October tenth two thousand thirteen

ILLINOIS because of petitioners false and misleading
statements, making these similar allegations in case 10-CV-
3051 res judicata and stare decisis.

Seventeen.  That paragraph nine of the same motion does not
fully state that the Petition is false and misleading.

Eighteen.  That the Affidavit of Probable cause, EXHIBIT E,
does ever mention or use the name ALFRED GEREBIZZA.

Nineteen.  That the Affidavit of Probable cause, EXHIBIT E, on
page 21, does not outline the S.E.C. independent accounting by
Wilburn Saylor Jr. clearly outlining his analysis and proving
that there were no transfers to or from THE LEARNING MATRIX,
TLM.

Twenty.  That the sworn Affidavit of Probable cause does not
clearly and truly evidence Alfred Gerebizzas innocence and
uninvolvement in this matter.  EXHIBIT E.

        For the reasons and Facts stated above, I hereby
rebutt all presumptions of Guilt, personam jurisdiction,
subject matter jurisdiction, consent and All other
presumptions that are not Fact.  At no time did I accept any
offer to contract or consent to any proceedings in case No. 10
CV 3051 in the NORTHERN DISTRICT of ILLINOIS FEDERAL UNITED
STATES EASTERN DIVISION court.  I further rebutt all
presumptions of summons, void, ab initio, nunc pro tunc.  I
hereby declare and affirm:

One.  At no time after the year two thousand was I, Alfred
Gerebizza, under any obligation to GARY GOLDMAN et al,
Plaintiffs, DANIEL SPITZER any of his entities including but
not limited to DRASEENA FUNDS GROUP CORP, and any of its
funds.  No contract exists.

under reserve with the copy claim

32250 2010 agent.

Not a corporation but living soul

October tenth two thousand thirteen

Two. At no time, did I as agent for THE LEARNING MATRIX otherwise known as TLM in this case, ever voluntarily or consentually enter into a contract with Daniel Spitzer or any of his entities or clientele.

Three. THE LEARNING MATRIX (TLM) was formed in July of two-thousand eight and dissolved in December of two-thousand eight.

Four. At no time did THE LEARNING MATRIX (TLM) ever receive any assets of any kind from Kenzie Funds, Daniel Spitzer, Draseena Funds Group Corp including but no limited to any of their investors, associates, or affiliates. See EXHIBIT E

Five. At no time did I consent or agree to Daniel Spitzer or any of his associates in the use of the name Alfred Gerebizza or any derivatives thereof, without my express written consent.

It is now obvious, that Daniel Spitzer sought to mislead me and others as to the true nature and intent of his business dealings. Daniel Spitzer along with his attorney at KAMENSKY RUBENSTEIN HOCHMAN and DELOTT assured me that all records after the sale and transfer of ownership interests in the year two thousand would reflect the agreed transaction and that the name Alfred Gerebizza and all derivatives thereof would be removed and redacted from all including but not limited to offering documents, books and minutes, state filings, stocks, shares, agreements thereby assuring me that no further liabilities existed.

It is also obvious that Daniel Spitzer sought to withhold information from me as well as the unauthorized use of my name in his business affairs. The S.E.C. audit

under reserve with the copy claim
~~Appl Egg~~ 322 502 010 agent.
Not a corporation but living soul
October tenth two thousand thirteen

performed during the period of nineteen ninety eight and the
year two thousand showed no errors in accounting of fund or
client assets.  That very audit was used as an evaluation for
the sale and transfer of All my ownership interests in two
thousand.  It is clear and factually stated, that Daniel
Spitzer took matters into his own hands and formed new
entities, raised additional capital, formed new relationships
without my help or assistance.  In addition he fabricated
stories and statements as well as vast amounts of documents
and entities in hopes of camouflaging his real intent.
Furthermore, because there were no contracts, private
placement memorandums, ownership interests, managerial
responsibilities, duties or responsibilities to the plaintiffs
in case No. 10-CV-3501 or with Daniel Spitzer, Draseena Funds
Group Corp, Kenzie Funds or any of Daniel Spitzers entities,
associates, funds and the like, this court has been acting on
false, misleading, and an incomplete story, provided by
plaintiffs and their attorneys KATTEN and TEMPLE.  Case 10-CV-
3051 is a False claim without basis against this defendant and
the Facts stated do not support the claim, but in fact
demonstrate and prove how unconscionable it would be not to
dismiss the defendant from this case forthwith.  In addition,
because of the lack of any consideration being paid to the
defendant after the sale and transfer of ownership interests,
that in itself evidences the fact that a promise and contract
did not exist between the defendant and the plaintiffs or the
entities aforementioned.

Seven independent sources, have proven that Daniel
Spitzer was the sole individual responsible for the schemes

under reserve with the copy claim

Afllrp 322502010    agent

Not a corporation but living soul

October tenth two thousand thirteen

and frauds alleged. The seven sources, KAMENSKY RUBENSTEIN

HOCHMAN and DELOTT by Michael Brahman and Stewart Gimbel,

Natalie Reda, investigator for the UNITED STATES POSTAL

SERVICE, Wilburn Saylor Jr. of the UNITED STATES SECURITIES

EXCHANGE COMMISSION as well as others hereby provided sworn

declaration of fact, true and correct under penalties or

perjury, that Daniel Spitzer is solely responsible for the

damages in case no. 10-CV-3051 in the NORTHERN DISTRICT of

ILLINOIS, FEDERAL UNITED STATES, EASTERN DIVISION.

I hereby declare further, that I Alfredo Gerebizza

have not given personam jurisdiction, subject matter

jurisdiction, or consent to this court. As General Executor,

General Guardian and Beneficiary of all matters, including but

not limited to the Cesti que via trust ALFREDO GEREBIZZA, I

instruct this court to dismiss the defendant ALFRED GEREBIZZA

from case No. 10-CV-3051 with prejudice within ten days of

receipt of this document and its attached EXHIBITS.

This document is presented as an affidavit and under

kis supra must be taken as true pending production of counter

evidence. My reservation of "without prejudice" is an

affirmative defense and peremptory rebuttal and agency cannot

abrogate as the enabling clause has been conditional via

express representation.

Duly sworn and verified inclusive of _10_ pages plus

EXHIBITS.

Without prejudice U.C.C. 1-308

under reserve with the copy claim

~~Jeffrey~~ 32250200 agent

Not a corporation but living soul

October tenth two thousand thirteen

By:

Alfred Gerebizza

General guardian

General executor

Beneficiary


Witness

HUASCAR CUEVAS


NICOLE PERRY
Notary Public - Arizona
Maricopa County
My Comm. Expires Oct 6, 2016

Witness

Nicole Perry
October 4, 2013

Without prejudice

under reserve with the copy claim

322502010    agent

Not a corporation but living soul

October tenth two thousand thirteen

*EXHIBIT A*

*FILE COPY*

LAW OFFICES

# KAMENSKY RUBINSTEIN HOCHMAN & DELOTT, LLP

AN LLP INCLUDING PROFESSIONAL CORPORATIONS

SUITE 200

7250 NORTH CICERO AVENUE

LINCOLNWOOD, ILLINOIS 60712-1693

——

(847) 982-1776

FACSIMILE: (847) 982-1676
WWW.KR-LAW.COM

SUITE 4300

30 NORTH LASALLE STREET

CHICAGO, ILLINOIS 60602

TELEPHONE (312) 368-1776

TELEPHONE (312) 807-3960

May 1, 2009

**BY FEDERAL EXPRESS**

Mr. Daniel H. Spitzer
c/o Alling & Jillson, Ltd.
276 Kingsbury Grade, Suite 2000
Lake Tahoe, NV 89449-3390

      **RE:   Draseena Funds Group, Corp. ("Draseena")**

Dear Mr. Spitzer:

     As we recently discussed with Al Gerebizza, we have prepared the following documents to correct the reporting of Mr. Gerebizza as the Secretary and a Director of Draseena for the years 2005 to the present (it is our understanding that you are aware of the impending transactions):

    1)    Statements of Correction to the Annual Reports for the Years 2005 through 2008. Please sign and date **two (2) copies** of each Statement of Correction **IN BLACK INK**.

    2)    Amended Annual Report for the Year 2009. Please sign and date **two (2) copies IN BLACK INK**.

    3)    Consent of the Sole Shareholder and Sole Director in Lieu of Special Meeting. Please sign and date **two (2) copies**.

     I have provided you with copies of Items 1 through 3 for your records. These copies do not require your signature. Also enclosed is a copy of a letter that has been sent to Mr. Gerebizza for his signature wherein he states that he has not been the Secretary or a Director of Draseena since 2005 and he is no longer affiliated with Draseena.

     Please return the signed originals to me in the enclosed Federal Express envelope at your earliest convenience. Feel free to call us if you have any questions.

             Very truly yours,

             KAMENSKY RUBINSTEIN
             HOCHMAN & DELOTT, LLP

             Priscilla M. Dragoi-Zulieic, J.D.
             *Corporate Paralegal*

Enclosures
cc:   Mr. Alfred Gerebizza (by e-mail, w/encl.)
     Ben M. Roth, Esq. (w/encl.)

[#12356-101/150]
@PFDesktop\::ODMA/WORLDOX/W:/WP51/PRJS/PD9757.WPD

EXHIBIT-B

FORM **BCA 1.15** (rev. Dec. 2003)
**STATEMENT OF CORRECTION**
Business Corporation Act

Secretary of State
Department of Business Services
Springfield, IL 62756
217-785-2237
www.cyberdriveillinois.com

Remit payment in the form of a
check or money order payable
to Secretary of State.        File #_____

Franchise Tax $_____ Penalty/Interest $_____ Filing Fee: $50  Total $_____ Approved: _____

———— **Submit in duplicate** ———— **Type or Print clearly in black ink** ———— **Do not write above this line** ————

1. Corporate Name: _____ Draseena Funds Group, Corp. _____

2. State or Country of Incorporation: _____ ILLINOIS _____

3. Title of Document to be corrected:_____ Annual Report for the Year 2005 _____

4. Date Erroneous Document was filed by Secretary of State: _____ 03 / 15 / 2005 _____

5. Inaccuracy, error or defect:
   (Briefly identify the error and explain how it occurred. Use reverse side or attach additional sheets of this size if necessary.)

   Alfred Gerebizza was listed as the Secretary and a Director of Draseena Funds Group, Corp. Alred Gerebizza was not the Secretary and was not a Director at that time. A letter attesting to this error and signed by Alfred Gerebizza is attached to this Statement of Correction.
   The error was made inadvertently. The Annual Report was automatically generated using a specialized computer program, and the Officer/Director information was overlooked.

6. Corrected portion(s) of the document in correct form:
   (Use reverse side or attach additional sheets of this size if necessary.)

   Daniel H. Spitzer should be listed as the President AND Secretary, as well as the sole Director.
   Alfred Gerebizza should be removed as Secretary and a Director.

7. The undersigned Corporation has caused this statement to be signed by a duly authorized officer who affirms, under penalties of perjury, that the facts stated herein are true and correct. All signatures must be in **BLACK INK**.

   Dated _____, 2009        Draseena Funds Group, Corp.
                Month & Day        Year              Exact Name of Corporation

   _____
   Any Authorized Officer's Signature
   Daniel H. Spitzer, President
   Name and Title (type or print)

Printed by authority of the State of Illinois. June 2006 - 5M - C 199.11

FORM **BCA 1.15** (rev. Dec. 2003)
**STATEMENT OF CORRECTION**
Business Corporation Act

Secretary of State
Department of Business Services
Springfield, IL 62756
217-785-2237
www.cyberdriveillinois.com

Remit payment in the form of a
check or money order payable
to Secretary of State.          File #_____

Franchise Tax $_____ Penalty/Interest $_____ Filing Fee: $50  Total $_____ Approved: _____

— — — — **Submit in duplicate** — — — — **Type or Print clearly in black ink** — — — — **Do not write above this line** — — — —

1.  Corporate Name: _____ Draseena Funds Group, Corp. _____

2.  State or Country of Incorporation: _____ ILLINOIS _____

3.  Title of Document to be corrected:_____ Annual Report for the Year 2006 _____

4.  Date Erroneous Document was filed by Secretary of State: _____ 03 / 01 / 2006 _____

5.  Inaccuracy, error or defect:
    (Briefly identify the error and explain how it occurred. Use reverse side or attach additional sheets of this size if necessary.)

Alfred Gerebizza was listed as the Secretary and a Director of Draseena Funds Group, Corp. Alred Gerebizza was not
the Secretary and was not a Director at that time. A letter attesting to this error and signed by Alfred Gerebizza is
attached to this Statement of Correction.
The error was made inadvertently. The Annual Report was automatically generated using a specialized computer
program, and the Officer/Director information was overlooked.

6.  Corrected portion(s) of the document in correct form:
    (Use reverse side or attach additional sheets of this size if necessary.)

Daniel H. Spitzer should be listed as the President AND Secretary, as well as the sole Director.
Alfred Gerebizza should be removed as Secretary and a Director.

7.  The undersigned Corporation has caused this statement to be signed by a duly authorized officer who affirms, under
    penalties of perjury, that the facts stated herein are true and correct. All signatures must be in **BLACK INK**.

Dated _____, 2009   _____ Draseena Funds Group, Corp. _____
                 Month & Day              Year                    Exact Name of Corporation

_____
Any Authorized Officer's Signature

Daniel H. Spitzer, President
Name and Title (type or print)

Printed by authority of the State of Illinois. June 2006 - 5M - C 199.11

*EXHIBIT C*

FORM **BCA 1.15** (rev. Dec. 2003)
**STATEMENT OF CORRECTION**
Business Corporation Act

Secretary of State
Department of Business Services
Springfield, IL 62756
217-785-2237
www.cyberdriveillinois.com

Remit payment in the form of a
check or money order payable
to Secretary of State.      File #_____

Franchise Tax $_____ Penalty/Interest $_____ Filing Fee: $50 Total $_____ Approved: _____

———— **Submit in duplicate** ———— **Type or Print clearly in black ink** ———— **Do not write above this line** ————

1.  Corporate Name: _____ Draseena Funds Group, Corp. _____

2.  State or Country of Incorporation: _____ ILLINOIS _____

3.  Title of Document to be corrected:_____ Annual Report for the Year 2007 _____

4.  Date Erroneous Document was filed by Secretary of State: _____ 03 / 02 / 2007 _____

5.  Inaccuracy, error or defect:
    (Briefly identify the error and explain how it occurred. Use reverse side or attach additional sheets of this size if neces-
    sary.)

    Alfred Gerebizza was listed as the Secretary and a Director of Draseena Funds Group, Corp. Alred Gerebizza was not
    the Secretary and was not a Director at that time. A letter attesting to this error and signed by Alfred Gerebizza is
    attached to this Statement of Correction.
    The error was made inadvertently. The Annual Report was automatically generated using a specialized computer
    program, and the Officer/Director information was overlooked.

6.  Corrected portion(s) of the document in correct form:
    (Use reverse side or attach additional sheets of this size if necessary.)

    Daniel H. Spitzer should be listed as the President AND Secretary, as well as the sole Director.
    Alfred Gerebizza should be removed as Secretary and a Director.

7.  The undersigned Corporation has caused this statement to be signed by a duly authorized officer who affirms, under
    penalties of perjury, that the facts stated herein are true and correct. All signatures must be in **BLACK INK**.

    Dated _____, 2009      _____ Draseena Funds Group, Corp. _____
                 Month & Day         Year                Exact Name of Corporation

    _____
            Any Authorized Officer's Signature

    _____
           Daniel H. Spitzer, President
           Name and Title (type or print)

*EXHIBIT-C*

FORM **BCA 1.15** (rev. Dec. 2003)
**STATEMENT OF CORRECTION**
Business Corporation Act

Secretary of State
Department of Business Services
Springfield, IL 62756
217-785-2237
www.cyberdriveillinois.com

Remit payment in the form of a
check or money order payable
to Secretary of State.          File #_____

Franchise Tax $_____ Penalty/Interest $_____ Filing Fee: $50 Total $_____ Approved: _____

———— **Submit in duplicate** ———— **Type or Print clearly in black ink** ———— **Do not write above this line** ————

1. Corporate Name: _____ Draseena Funds Group, Corp. _____

2. State or Country of Incorporation: _____ ILLINOIS _____

3. Title of Document to be corrected:_____ Annual Report for the Year 2008 _____

4. Date Erroneous Document was filed by Secretary of State: _____ 03 / 13 / 2008 _____

5. Inaccuracy, error or defect:
   (Briefly identify the error and explain how it occurred. Use reverse side or attach additional sheets of this size if necessary.)

   Alfred Gerebizza was listed as the Secretary and a Director of Draseena Funds Group, Corp. Alred Gerebizza was not the Secretary and was not a Director at that time. A letter attesting to this error and signed by Alfred Gerebizza is attached to this Statement of Correction.
   The error was made inadvertently. The Annual Report was automatically generated using a specialized computer program, and the Officer/Director information was overlooked.

6. Corrected portion(s) of the document in correct form:
   (Use reverse side or attach additional sheets of this size if necessary.)

   Daniel H. Spitzer should be listed as the President AND Secretary, as well as the sole Director.
   Alfred Gerebizza should be removed as Secretary and a Director.

7. The undersigned Corporation has caused this statement to be signed by a duly authorized officer who affirms, under penalties of perjury, that the facts stated herein are true and correct. All signatures must be in **BLACK INK**.

Dated _____ , 2009    _____ Draseena Funds Group, Corp. _____
            Month & Day          Year              Exact Name of Corporation

       _____
       Any Authorized Officer's Signature
       Daniel H. Spitzer, President
       Name and Title (type or print)

Printed by authority of the State of Illinois. June 2006 - 5M - C 199.11

# AMENDED

*EXHIBIT C*

YEAR OF: 2009
File Prior to: 03/01/2009

### STATE OF ILLINOIS
### DOMESTIC CORPORATION ANNUAL REPORT
PLEASE TYPE OR PRINT CLEARLY IN BLACK INK

CORPORATION
FILE #: __D58254827__

**NOTE:** A change in the Registered Agent and/or Registered Office may only be effected by filing Form BCA-5.10/5.20. If there have been any changes in items 6 or 7a, Form BCA-14.30 *must be completed and submitted in the same envelope.*

1. Corporate Name:  Draseena Funds Group, Corp.
   Registered Agent:  Ben M. Roth
   Registered Office:  7250 N. Cicero Ave., Ste. 200
   City, IL, ZIP Code:  Lincolnwood, IL 60712          County:  **Cook**

2. Principal Address of Corporation:

   | Street | City | State | ZIP Code |
   |---|---|---|---|

3. Date Incorporated: _____ 03 / 22 / 1995 _____
   Month     Day     Year

4. Names and Addresses of Officers and Directors:
   **NOTE: The names and addresses of ALL officers and directors must be entered in this item.**

   | OFFICE | NAME | NUMBER & STREET | CITY | STATE | ZIP |
   |---|---|---|---|---|---|
   | President | Daniel H. Spitzer | P.O. Box 7230 | Stateline | NV | 89449 |
   | Secretary | Daniel H. Spitzer | P.O. Box 7230 | Stateline | NV | 89449 |
   | Treasurer | | | | | |
   | Director | Daniel H. Spitzer | P.O. Box 7230 | Stateline | NV | 89449 |
   | Director | | | | | |
   | Director | | | | | |

5. If 51% or more of stock is owned by a minority or female, please check appropriate box:  ☐ Minority Owned   ☐ Female Owned

6. Number of shares authorized and issued (as of    01 / 01 / 2009        ):

   | CLASS | SERIES | PAR VALUE | NUMBER AUTHORIZED | NUMBER ISSUED |
   |---|---|---|---|---|
   | COMMON | | .00000 | 10,000.00 | 30,000.00 |
   | PREF I VOTE | | .00000 | 10,000.00 | 0.00 |

**IMPORTANT:** If the amount in item 6 or 7a differs from the Secretary of State's records, Form BCA 14.30 must be completed.

7a. Amount of Paid-in Capital (as of ___01 / 01 / 2009___ ): $ ___5,287,464.00___

7b. Paid-in Capital on record with Secretary of State: $ _____5,287,464.00_____

(Paid-in Capital reflects the sum of the Stated Capital and Paid-in surplus accounts.)

8. By _____
   Any Authorized Officer's Signature     Title          Date

   **Item 8 Must Be Signed.**

Under the penalty of perjury and as an authorized officer, I declare that this annual report, pursuant to provisions of the Business Corporation Act, has been examined by me and is, to the best of my knowledge and belief, true, correct and complete.

RETURN TO:
Jesse White, Secretary of State
Department of Business Services • 501 S. Second St. • Springfield, IL 62756
217-782-7808 • www.cyberdriveillinois.com

## Please Complete Reverse Side of This Report

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PRESIDENT
SECRETARY
**IF THE ABOVE OFFICERS' NAMES AND ADDRESSES ARE MISSING OR HAVE
CHANGED, ENTER ONLY THE ADDITIONS OR CORRECTIONS BELOW.**

File #

PRESIDENT _____
Name     Street Address     City     State     ZIP Code

SECRETARY _____
Name     Street Address     City     State     ZIP Code

Printed by authority of the State of Illinois. March 2008 — 10M — C 289.8

(Item 9 OR 10a OR 10b, whichever is applicable, MUST be completed.)

9.   Amounts stated in parts (a) through (d) below are given for the 12-month period
ending _____ , _____ .
                 Day            Month         Year

Value of the property (gross assets):

(a) owned by the corporation, wherever located: ................................................................... (a) $ _____

(b) of the corporation located within the State of Illinois: ....................................................... (b) $ _____

Gross amount of business transacted by the corporation:

(c) everywhere for the above period: .................................................................................... (c) $ _____

(d) at or from places of business in Illinois for the above period: ........................................... (d) $ _____

ALLOCATION FACTOR = $\dfrac{b+d}{a+c}$ = $\cdot$ _____ Enter this figure on line 11b below.
                                               6 decimal places

10a.  ☐  ALL property of the Corporation is located in Illinois and ALL business of the Corporation is transacted at or from places of business in Illinois.

10b.  ☑  The Corporation **elects** to pay franchise tax on the basis of 100% of its total Paid-in Capital.

     ALLOCATION FACTOR = 1.00000 *(Enter this figure on line 11b below.)*

## STOP: Item 9 or 10 must be completed before continuing to Item 11.

                                                                                                    ████████

11.   ANNUAL FRANCHISE TAX AND FEES                                              ████████

| | | |
|---|---|---|
| 11a.  TOTAL PAID-IN CAPITAL (Enter amount from Item 7a;<br>if late, enter the greater of 7a or 7b.) ................................ | a. | |
| 11b.  ALLOCATION FACTOR (Enter from Item 9 or Item 10.) ............. | b. | |
| 11c.  ILLINOIS CAPITAL (Multiply line 11a by line 11b.) ................. | c. | |
| 11d1. Multiply line 11c by .001 (Round to nearest cent.) .................. | d1. | |
| 11d2. ANNUAL FRANCHISE TAX (Enter amount from line d1, but not less than $25.) ..................... | | d2. |
| 11e1. If Annual Report is late, multiply line d2 by .10 ...................... | e1. | |
| 11e2. If Annual Franchise Tax is late, multiply line d2 by .02 for each month<br>late or part thereof (minimum $1) ....................................... | e2. | |
| 11e3. INTEREST & PENALTIES (Add lines e1 and e2.) ..................... | | e3 |
| 11f.   ANNUAL REPORT FILING FEE ($75) ........................... | | 11f  + 75.00 |
| 11g.  TOTAL ANNUAL FRANCHISE TAX, FEES, INTEREST, PENALTIES DUE<br>(Add line d2 + line e3 + line f.) ........................................ | | 11g     75.00 |

**MAKE CHECKS PAYABLE TO ILLINOIS SECRETARY OF STATE.**
**(Place corporate file number on check.)**

## IMPORTANT
**If there have been changes in Items 6 or 7, Form BCA 14.30 must be executed and**
**submitted with this Annual Report in the same envelope.**

Printed by authority of the State of Illinois. March 2008 — 10M — C 289.8

**JOINT CONSENT**
**OF THE SOLE SHAREHOLDER AND SOLE DIRECTOR**
**OF**
**DRASEENA FUNDS GROUP, CORP.**
**IN LIEU OF SPECIAL MEETING**

The undersigned, being the sole Shareholder and Director of the above-captioned Illinois corporation

(the "Corporation"), acting pursuant to the applicable provisions of the Business Corporation Act of the State

of Illinois and to the applicable provisions of the By-Laws of the Corporation, does hereby authorize and

consent in lieu of special meeting to the adoption of the following resolutions:

**RESOLVED**, that the Corporation acknowledges and confirms that Alfred Robert Gerebizza is not the Secretary or a Director of the Corporation;

**FURTHER RESOLVED**, that the Corporation acknowledges and confirms that Daniel H. Spitzer is the President, Secretary, Treasurer and Sole Director of the Corporation;

**FURTHER RESOLVED**, that the Corporation acknowledges and confirms that Alfred Robert Gerebizza was not the Secretary or a Director of the Corporation during the following years: 2005, 2006, 2007 and 2008;

**FURTHER RESOLVED**, that the President and Secretary of the Corporation are hereby fully authorized and directed to file a Statement of Correction to the Annual Reports for the years 2005, 2006, 2007 and 2008 with the Illinois Secretary of State to correct the prior inaccurate reporting to the Illinois Secretary of State of Alfred Robert Gerebizza as the Secretary and a Director of the Corporation, and to do all other acts and things that may be necessary in connection with the change authorized herein;

**FURTHER RESOLVED**, that the President and Secretary of the Corporation are hereby fully authorized and directed to file an Amended Annual Report for the year 2009 with the Illinois Secretary of State to correct the reporting of Alfred Robert Gerebizza as the Secretary and a Director of the Corporation, and to do all other acts and things that may be necessary in connection with the change authorized herein;

**FURTHER RESOLVED**, that the Corporation confirms that the Minutes of the Annual Meeting for the years 2005 and 2008, signed by Daniel H. Spitzer and reflecting Alfred Robert Gerebizza as the Secretary and a Director of the Corporation, were prepared in error and authorize and direct the President and proper Secretary of the Corporation to prepare and execute corrected Meeting Minutes;

**FURTHER RESOLVED**, that the officers of Corporation be, and they are hereby, fully authorized, directed and empowered, to execute, acknowledge and deliver in the name of and on behalf of Corporation, any and all further instruments or writings, and to take such further action as is necessary to carry out the purpose and intent of these resolutions.

**IN WITNESS WHEREOF**, this Consent is effective as of the _____ day of _____,

2009.

_____
**Daniel H. Spitzer**
*Being the Sole Shareholder and Sole Director*
*of the Corporation.*

*EXHIBIT D*

## CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

| | | | |
|---|---|---|---|
| SHIRLEY GEREBIZZA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | No. | 01 D 86 |
| | ) | | |
| ALFRED GEREBIZZA, | ) | | |
| | ) | | |
| Defendant. | ) | | |

### MOTION TO DISSOLVE PRELIMINARY INJUNCTION ORDER

The Conservium Fund, LLC ("Conservium"), Three Oaks Fund 25, LLC ("Three Oaks 25"), Three Oaks Senior Strength Fund, LLC ("Three Oaks Senior"), Senior Strength-Q Fund, LLC ("Senior Strength-Q"), Three Oaks Advanced Fund, LLC ("Three Oaks Advanced"), Three Oaks Fund LP ("Three Oaks L.P."), Three Oaks Currency Fund, LP ("Three Oaks Currency") and Nerium Currency Fund, LP ("Nerium")(collectively, the "Funds"), by their attorneys, Kamensky Rubinstein Hochman & Delott, LLP, move this Court, pursuant to Section 11-108 of the Illinois Code of Civil Procedure, to dissolve the Preliminary Injunction Order or Temporary Restraining Order entered by this Court in the above-captioned cause on or about February 21, 2006, restraining and enjoining any transactions from being made with respect to certain designated accounts of the Funds which are being administered by Harris Bank. In support of this motion, the Funds state as follows:

1.     Conservium, Three Oaks 25, Three Oaks Senior, Senior Strength-Q and Three Oaks Advanced are all Nevada limited liability companies doing business in Stateline, Nevada. Three Oaks LP, Three Oaks Currency and Nerium are all Nevada limited partnerships doing business in Stateline, Nevada.

1

2.      The Funds are all private investment funds, which means that each fund separately pools the contributions of its numerous investors and makes investments in a variety of areas.

3.      To cover their administrative costs and to hold available investor funds or investment returns prior to reinvestment, the Funds all maintain accounts at Harris Bank: Conservium is under account No. 0700144754; Three Oaks 25 is under account No. 721011509; Three Oaks Senior is under account No. 0700144630; Senior Strength-Q is under account No. 0700144762; Three Oaks Advanced is under account No. 700141488; Three Oaks L.P. is under account No. 700139106; Three Oaks Currency is under account No. 700135747; and Nerium is under account No. 700136603 (collectively, the "Fund Accounts"). The Fund Accounts are the property of the numerous private investors in the Funds.

4.      The name of defendant Alfred Gerebizza ("Gerebizza") does not appear on any of the Funds' K-1 reports, and there do not appear to be any investments, cash or assets of any of the Fund Accounts which are in the name of Gerebizza. See Affidavit of Rich Yasak, ¶'s 5 and 6, a true and correct copy of which is attached hereto as Exhibit A.

5.      Neither the Funds nor their numerous private investors are parties to this law suit. In addition, on or prior to February 21, 2006, neither the Funds nor their numerous private investors were served by Plaintiff with her Petition for Injunctive Relief. Thus, the Funds and their numerous private investors did not have notice that Plaintiff would be appearing before this Court on February 21 with the intent of attempting to freeze or enjoin transactions involving the investments, cash and assets which the private investors currently hold in the Fund Accounts.

6.    Because there are no investments, cash or assets in any of the Fund Accounts which are the property of Gerebizza, this Court obviously had no jurisdiction over the Funds. Nor did this Court have any authority to issue the injunctive relief sought by Plaintiff in her Petition, or any injunctive relief whatsoever which would serve to freeze or enjoin transactions involving the investments, cash and assets which non-party private investors currently hold in the Fund Accounts.

7.    Presumably based on a false, misleading or incomplete story provided by Plaintiff, on February 21, 2006, this Court mistakenly entered an injunction Order having the effect of freezing or enjoining transactions the cash and assets which only non-party private investors currently hold in the Fund Accounts (the "Order"). A true and correct copy of the Order is attached hereto as Exhibit B. Because none of the accounts affected by the Court's Order involves cash or assets owned by either Gerebizza, the Order should immediately be dissolved and no further injunction orders against the Fund Accounts should be entered.

8.    Unfortunately, unbeknownst to the Funds and their private investors, all the Court had before it on February 21 was Plaintiff's false and misleading Petition which sought to restrain and enjoin any transactions from being made from the Fund Accounts. A true and correct copy of the Petition is attached hereto as Exhibit C. The Petition alleges that Gerebizza, through Draseena Funds Group Corporation ("Draseena"), maintains ownership over the Fund Accounts. (Petition, ¶ 14). Although providing no evidence in support of that allegation, the Petition asserts that Gerebizza admitted his ownership of the Accounts by failing to respond to a Rule 216 Request to Admit that fact which was served in November, 2004. (Petition, ¶ 16).

3

The Request to Admit, which is attached to the Petition, does not refer to ownership, but merely states that in 2004, Gerebizza was an account holder for the Fund Accounts. (Petition, Ex. A).

9.    The Petition is false and misleading.  Gerebizza does not own any assets contained in the Fund Accounts.  Moreover, the funds in the Fund Accounts, although managed by the corporate entity Draseena, are not owned by Draseena or any of its officers or owners.. Instead, the Fund Accounts contain cash, investments and assets which are solely owned by and belong to their numerous non-party investors.

10.    In fact, there is no basis for Plaintiff's assumption that Gerebizza owns the Fund Accounts because each of the Accounts is owned by and held in the name of one of the Funds. Attached hereto as Exhibits D through K are account statements for each of the Accounts, which identify the name of the Fund in which each account is held.

11.    Plaintiff's own Petition even belies her allegations.  She acknowledges that Gerebizza is in the business of offering and selling private securities to independent investors, and even admits that there are at least 180 individual investors in Three Oaks LP alone.  Petition, ¶s 3-8.  Accordingly, it was entirely disingenuous of Plaintiff to argue that Gerebizza owned the Accounts, and the various investor assets maintained in the Accounts, when she knew that the Accounts were for investment funds which, at most, Gerebizza was involved in managing.  Even accepting Plaintiff's allegations that Gerebizza was still involved in Draseena or the management of the Funds (which he was not), there is no basis for her allegation that investor funds in the Account somehow are owned by Gerebizza and subject to his personal disputes.  Indeed, it has

---

[1] Shirley argues that Alfred continues to maintain an ownership interest in Draseena as of January, 2006. (Petition, ¶ 13). Although the Funds dispute that point, since Gerebizza relinquished his ownership interest in Draseena long before 2006, that issue is not material to the impropriety of the Order.

been recognized that "merely having control over assets in an insufficient basis to support an injunction." *In re Marriage of Centioli*, 335 Ill.App.3d 650, 781 N.E.2d 611, 618 (1st Dist. 2002). The fact that Gerebizza allegedly admitted (by not answering a Request to Admit) that he owned the Fund Accounts, does not convert property which does not belong to him into his assets (just as failure to deny a request to admit would not make Gerebizza the owner of the Brooklyn Bridge if that was one of the facts requested).

12.     Because the assets in the Fund Accounts are owned by their non-party investors, and not by Gerebizza, there is no basis for this Court to keep in force an Order which restrains and enjoins any transactions involving the Fund Accounts.

13.     Moreover, the Order is, on its face, massively over broad and unduly burdensome. Section 501 of the Marriage and Dissolution Act ("Act"), under which the Petition is brought, specifically provides that preliminary injunctive relief may be order "restraining any person from transferring, encumbering, concealing or otherwise disposing of any property except in the usual course of business...and, if so restrained, requiring him to notify the moving party and his attorney of any proposed extraordinary expenditures made after the order is issued." 750 ILCS 5/501 (emphasis supplied). Because Plaintiff left out the emphasized language, the Order purports to prohibit any transactions out of the Accounts, even if required in the ordinary course of business. Such a preliminary injunction, which could have the effect of totally shutting down the Funds to the detriment of their private investors, is totally unwarranted under the Act.

11.     In summary, as a result of the misrepresentations or omissions made by Plaintiff, this Court's overly broad and unwarranted Order has frozen assets which are not owned by Gerebizza, but instead are owned by numerous non-party private investors who are totally

unaware that their property is at risk. Such injunctive relief was entirely unwarranted and inappropriate as against the Funds or the Fund Accounts.

WHEREFORE, the Funds respectfully request that this Court, pursuant to Section 11-108 of the Illinois Code of Civil Procedure, 1) dissolve the Preliminary Injunction or Temporary Restraining Order entered in the above-captioned cause on or about February 21, 2006, 2) not issue any other Orders having the effect of restraining and enjoining any transactions with respect to the Fund Accounts, various bank accounts administered by Harris Bank, and 3) grant such other and further relief as this Court deems just in the premises.

Dated: March 6, 2006

Respectfully submitted,

**THE CONSERVIUM FUNDS, LLC; THREE OAKS FUND 25, LLC; THREE OAKS SENIOR STRENGTH FUND, LLC; SENIOR STRENGTH-Q FUND, LLC; THREE OAKS ADVANCED FUND, LLC; THREE OAKS FUND, LP; THREE OAKS CURRENCY FUND, LP; and NERIUM CURRENCY FUND, LP**

By:_____
               One of their Attorneys

Michael B. Brohman, Esq.
Stuart M. Gimbel, Esq.
Kamensky Rubinstein Hochman & Delott, LLP.
7250 N. Cicero Avenue, Suite 200
Lincolnwood, IL 60712
(847-982-1776)

AO 91 (REV.5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT

NORTHERN ____ DISTRICT OF ____ ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA

V.

DANIEL SPITZER

**F I L E D**
8-2-10
AUG - 2 2010

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

CRIMINAL COMPLAINT

CASE NUMBER:

**10 CR 651**

*EXHIBIT E*

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

On or about May 4, 2009, ____ in Lake ____ county, in the Northern District of Illinois defendant,

having devised and participated in a scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing, and attempting to execute, the scheme to defraud, caused to be delivered by U.S. mail a quarterly statement to Investor C at his address in Riverwoods, Illinois, purporting to show that Investor A's account in the Three Oaks Senior Strength Fund had a balance of $302,101.68 as of March 31, 2009;

In violation of Title 18, United States Code, Section 1341.

I further state that I am a Postal Inspector, U.S. Postal Inspection Service, and that this complaint is based on the following facts:

See attached affidavit

Continued on the attached sheet and made a part hereof:  x Yes _ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

August 2, 2010                           at          Chicago, Illinois
Date                                                        City and State

GERALDINE SOAT BROWN, U.S. Magistrate Judge          _____
Name & Title of Judicial Officer                          Signature of Judicial Officer

STATE OF ILLINOIS )
                      )
COUNTY OF COOK )

## AFFIDAVIT

I, Natalie C. Reda, being duly sworn, state as follows:

1.     I am employed as a Postal Inspector with the United States Postal Inspection Service ("USPIS") and have been so employed since approximately September of 2003. My primary duties include investigating criminal violations of laws involving the United States Mails including, but not limited to, the crime of mail fraud, as defined at Title 18, United States Code, Section 1341. In my capacity as a Postal Inspector, I also investigate bank fraud, wire fraud, money laundering and other financial crimes. I have received specialized training in the enforcement of federal laws and have been involved in various investigations involving postal crimes. I have initiated and participated in criminal investigations involving the execution of search warrants, the review of subpoenaed financial documents, physical surveillance, arrests, and convictions.

2.     The information contained in this affidavit is based on my personal knowledge, on my review of records, and on information I have received from other law enforcement personnel, from persons with knowledge regarding relevant facts, and from the record in a civil case brought by the United States Securities and Exchange Commission ("SEC") against, among others, DANIEL SPITZER, *SEC v. Spitzer, et al.*, 10 CV 3758 (N.D. Ill.). Because of the limited

purpose of this affidavit, I have not set forth all of the information known to me concerning this investigation. I have set forth only those facts that I believe establish probable cause to believe that SPITZER committed the offense alleged in the complaint.

3.     This affidavit is submitted in support of a criminal complaint, alleging that on or about May 4, 2009, having devised and participated in a scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing, and attempting to execute, the scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations and promises, DANIEL SPITZER caused to be delivered by U.S. mail a quarterly statement to Investor C at his address in Riverwoods, Illinois, purporting to show that Investor C's account in the Three Oaks Senior Strength Fund had a balance of $302,101.68 as of March 31, 2009, in violation of 18 U.S.C. § 1341.

## Overview of the Scheme

4.     As set forth in more detail below, from at least 2004 to the present, SPITZER has perpetrated a fraudulent investment scheme through the offer and sale of interests in twelve investment funds he controls:  Arrow Fund, LLC; Arrow Fund II, LLC; Nerium Currency Fund, LP; Conservium Fund, LLC; Senior Strength Q Fund, LLC; Three Oaks Senior Strength Fund, LLC; Three

2

Oaks Fund, LP; Three Oaks Currency Fund, LP; Three Oaks Advanced Fund, LLC; Three Oaks Fund 25, LLC; US First Fund, LLC, and SSecurity Fund, LLC (collectively known as "the Kenzie Funds"). During the offer and sale of interests in the Kenzie Funds, SPITZER provided investors with materially false and fraudulent information concerning, among other things, how he would use the investor funds, the safety of investor principal and the historical rate of return of the Kenzie Funds.

5.     As described below, SPITZER, through sales agents and various marketing materials, informed investors that their funds would be used to invest primarily in foreign currency trading, that the Kenzie Funds had never lost money, and that the Kenzie Funds had achieved profitable historical returns. Investors were also informed that after a minimum holding period, determined by the class of investment at issue, they could redeem their investments within a specified period of time, after prior written notice to the fund's administrative manager. Based on these representations, from 2004 until in or about March 2010, SPITZER raised approximately $105 million from approximately 400 investors. However, rather than invest these funds as represented to investors, SPITZER used the vast majority–approximately $71 million–to make Ponzi payments to investors to keep his scheme afloat.

6.     As part of the scheme, SPITZER caused false periodic statements

3

and false Schedule K-1 forms to be provided to investors. These false periodic statements and Schedule K-1 forms lulled investors into falsely believing that their investments were profitable and had earned positive rates of return. However, as detailed more fully below, the Kenzie Funds were nowhere near as profitable as represented to investors in the periodic statements and Schedule K-1 forms. As a result, when prior investors sought to redeem their interests in the funds, including both their principal investment and their purported investment gain, SPITZER either used funds raised from other, newer investors to pay off these redemptions ("Ponzi payments") or was unable to pay off the redemptions.

### SPITZER's Control of the Kenzie Funds

7.      SPITZER is a resident of St. Thomas in the U.S. Virgin Islands. He also maintains a residence in Barrington, Illinois. As described below, SPITZER ran the Kenzie Funds through a variety of corporate entities which he represented to be the administrative manager, trading manager, or investment manager of the funds.

8.      Each Kenzie Fund is a separate Nevada limited liability company or limited partnership. The private placement memoranda ("PPMs") for the Funds offer investors either "membership interests" or "limited partnership interests" in a particular fund. The PPMs for all twelve of the Kenzie Funds

4

make similar representations concerning the purported use of investor funds, including money market investments, time deposits, foreign and U.S. Treasuries, foreign currency forward contracts, cash currencies and investments, including stocks, bonds, options and real estate. However, many of the funds list separate investment strategies, and some funds were represented to be safer than others. For example, the PPM for the SSecurity Fund states that the objectives of the fund included "capital preservation" and notes that the fund will invest in, among other things, government guaranteed time deposits, low risk financial instruments, and fixed income securities. By contrast, the PPM for the Arrow Fund states that the trading strategy of that fund "is to seek appreciation of its assets through the purchase and sale of extremely high-risk of loss investments."

9.     The PPMs for eleven of the Kenzie Funds represent that Kenzie Financial Management is the "Trading Manager" for the funds. The PPMs state that Kenzie Financial Management is a U.S. Virgin Islands corporation with SPITZER as its principal officer and sole shareholder. The PPMs also state that the trading manager makes the Funds' investment decisions.

10.     The PPM for one fund, the SSecurity Fund, LLC, represents that Kenzie Services, LLC ("Kenzie Services"), is the fund's "Investment Manager." The PPM for the SSecurity Fund states that SPITZER is the sole manager and

5

member of Kenzie Services and lists a business address for Kenzie Services in Charlestown, Nevis, West Indies.

11.   The PPMs for six of the Kenzie Funds represent that Draseena Funds Group, Corp. ("Draseena") is the "administrative manager" or "general partner" of the funds. According to the PPMs, the administrative manager or general partner administers fund operations and selects the trading manager. The PPMs state that Draseena is an Illinois corporation with a P.O. Box address in Stateline, Nevada. Public Illinois Secretary of State records confirm that Draseena is an Illinois corporation, and show that SPITZER is its president.

12.   The PPMs for five of the Kenzie Funds represents that Aneesard Management, Co., LLC ("Aneesard") is the "administrative manager" of the funds. According to the PPMs, the administrative manager administers fund operations and selects the trading manager. The PPMs state that Aneesard is a Nevada limited liability company with a P.O. Box address in Stateline, Nevada. The PPMs further state that DN Management Company, LLC ("DN") is Aneesard's manager. DN is listed in the PPMs as a limited liability company located at the same address as Aneesard in Stateline, Nevada, with SPITZER as its principal. Public Nevada Secretary of State records confirm that Aneesard is a Nevada limited liability company, that DN is its manager, and that DN is a Nevada limited liability company with SPITZER as its manager.

6

13.    The PPM for one fund, the Nerium Currency Fund, LP, states that Nerium Management Company is the "General Partner" of the fund. According to the PPM, the general partner administers fund operations and selects the trading manager. The PPM states that Nerium Management Company is an Illinois corporation with a P.O. Box address in Stateline, Nevada. Public Illinois Secretary of State records confirm that Nerium Management Company is an Illinois corporation, and shows that SPITZER is its president.

### Kenzie's use of Investor A's money

14.    Law enforcement officers have conducted interviews with and received documents from Investor A, an investor in one of the Kenzie funds. Investor A has also provided a declaration under oath in the SEC action against SPITZER noted in paragraph 2 above.

15.    Investor A related that he first invested in the Kenzie funds approximately six years ago when he made a $250,000 investment into the US First Fund. In 2008 or 2009, Investor A successfully redeemed $100,000 of his investment in the US First Fund.

16.    According to Investor A, in late February and early March 2010, he spoke with SPITZER on several occasions on the telephone about investing in a Kenzie Fund called the SSecurity Fund, LLC. SPITZER told Investor A that the SSecurity Fund invested in bank-secured notes from different countries, and

that foreign banks guaranteed the principal in these investments. SPITZER told Investor A that the SSecurity Fund's investment objective was more conservative than the other investment funds he managed. SPITZER also told him that he could redeem his investment after a 30-day hold period.

17. On or about March 2, 2010, Investor A received a PPM, an operating agreement and related subscription agreements from Aneesard for the SSecurity Fund.

18. According to Investor A, after speaking with SPITZER and reviewing the operating agreement and related subscription documents, he invested $100,000 in the SSecurity Fund on or about March 29, 2010.

19. Investor A stated that at some point after he invested in the SSecurity Fund, his personal investment adviser told him that another Kenzie Fund, the US First Fund, was to be dissolved. Shortly thereafter, Investor A spoke with SPITZER during a telephone conversation and requested the return of the $100,000 he invested in the SSecurity Fund. Investor A also stated that, on April 21, 2010, he requested in writing a redemption from the SSecurity Fund. Moreover, on May 15, 2010, Investor A stated that he emailed SPITZER requesting the return of his investment in the SSecurity Fund. To date, Investor A has not yet received the $100,000 he invested and attempted to redeem.

20. A bank records analysis has revealed that of the $100,000 Investor

8

A invested, $9,492 was used to make Ponzi payments to four investors, $27,102 was transferred to the First Bank of Puerto Rico, and $26,257 was used for third party expenses.

## Kenzie's use of Investor B's money

21.    Investor B, a resident of Louisiana, had a similar experience.  On June 18, 2009, he invested $1.5 million in SSecurity Fund.  Investor B had invested in several of the Kenzie funds for approximately six or seven years prior to this point.   He initially invested because of advice he received in an investment newsletter.  Over time, he invested more money after receiving investment materials and personal visits from Individual 1, representing that the funds had different types of investments, including money market investments.[1] Investor B understood that the funds were invested in currencies. He was never told that his investment would be used to pay back other investors.  He received quarterly statements that indicated that his investment was earning positive returns.

22.    On June 17, 2009, Investor B mailed a check in the amount of $1.5 million to the SSecurity Fund's address in Stateline, Nevada.  Bank records reveal that on June 22, 2009, Investor B's check was deposited into an account

---

[1]Individual 1 was a former chief executive officer with Kenzie Financial Management. After approximately 2000, Individual 1 transferred his interest in the corporation to SPITZER and thereafter functioned as a salesperson for the Kenzie Funds.

9

in the name of SSecurity Fund, LLC at Wachovia Bank. Following the deposit, the account had a balance of $1,588,500. In early July, 2009, another $299,559 was deposited into the account. Between July 14, 2009 and July 17, 2009, virtually all of the funds were withdrawn from the SSecurity Fund account and transferred into accounts for other Kenzie funds, specifically, Three Oaks Currency, Nerium Currency, US First Fund, Three Oaks Senior, Three Oaks Advanced, the Arrow Fund II, The Arrow Fund, and Senior Strength. Between July 22, 2009 and July 31, 2009, virtually all of the funds transferred into these accounts from the SSecurity account were used to make payments to other investors. For example, on July 17, 2009, $100,000 was transferred from the SSecurity Fund account into the US First Fund account, bringing the account balance up to $124,937.45. The next transaction to occur on the account took place on July 22, 2009, when $100,000 was transferred from the US First Fund account into the account of an investor.

23.    In approximately September of 2009, Investor B sought to redeem all of his investments in the Kenzie funds. According to Investor B, he completed and mailed the necessary redemption forms. Shortly thereafter, he received a detailed worksheet from SPITZER, showing when and in what amounts the money would be redeemed from the different Kenzie funds.

24.    Investor B did not receive the funds as promised in the redemption

10

schedule. He called the Draseena office and received a telephone call from SPITZER in return. SPITZER told Investor B that he was experiencing liquidity problems and it might take a little time to liquidate the funds out of the investment and into funds for reimbursement. Investor B received a telephone call from SPITZER in June of 2010 in which SPITZER made similar representations. To date, Investor B has not received his redemptions.

### Investor C has not received overdue redemptions

25. Law enforcement officers have conducted interviews with and received documents from Investor C, an investor who lives in Riverwoods, Illinois, located in the Northern District of Illinois. Investor C has also provided a declaration under oath in the SEC action against SPITZER. Like Investors A and B, Investor C has attempted unsuccessfully in the last year to redeem his investments in one of the Kenzie funds.

26. According to Investor C, on or about April 1, 2007, he invested $250,000 in the Three Oaks Senior Strength Fund, LLC, one of the Kenzie Funds. Investor C told investigators that, before investing in the Three Oaks Senior Strength Fund, he received a PPM for the fund from Draseena. Investor C stated that he reviewed the PPM and relied on the information contained therein in deciding whether to invest in the Three Oaks Senior Strength Fund. The PPM for the Three Oaks Senior Strength Fund stated that up to five percent

11

of the fund's proceeds could be invested in U.S. Treasuries, and that the balance would be invested in "speculative trading foreign currency forward contracts, cash currencies and other investments, including without limitation, stocks, bonds, funds of funds, warrants, options, real estate, preferreds and convertibles and related peripheral opportunities."

27.    Investor C stated that, shortly before he invested in the Three Oaks Senior Strength Fund, he spoke with SPITZER over the telephone. Investor C stated that he asked SPITZER about the fund's strategy of trading currencies. SPITZER told Investor C that the fund bought and sold currencies. SPITZER also told Investor C that he would neither lose nor make a lot of money in the Three Oaks Senior Strength Fund. SPITZER said that the investment was safe, that it was not aggressive, and that the fund never had a losing quarter. Based on these representations from SPITZER, Investor C decided to invest in the fund.

28.    Investor C stated that, after he purchased membership interests in the fund, he received by mail quarterly statements from Draseena regarding his investment in the fund.[2] Each quarterly statement reflected positive returns on Investor C's investment. In fact, the quarterly statement for the quarter ended

---

[2]The office manager for Kenzie and Draseena has been interviewed and stated that quarterly statements and K-1s were mailed to investors from their office in Clearwater, Florida.

12

March 31, 2009, dated May 4, 2009 (provided to investigators by Investor C),
reflected that Investor C's investment in the Three Oaks Senior Strength Fund
was valued at $302,101.69, an over $50,000 gain from Investor C's initial
$250,000 investment in the fund approximately two years earlier. According to
Investor C, this statement was delivered by U.S. mail to him at his address in
Riverwoods, Illinois.

29.    According to Investor C, in January or February of 2009, he decided
to sell his interest in the fund and seek redemption. Investor C stated that he
completed the necessary redemption paperwork and sent it to the address
specified in the paperwork. Investor C stated that office personnel at Draseena
told him that he could expect a wire transfer of 90% of his investment on July
1, 2009, and that he would receive the remaining 10% between thirty and ninety
days thereafter.

30.    In August 2009, after having not yet received any part of his
redemption, Investor C stated that he called Draseena and asked to speak with
SPITZER. SPITZER later called Investor C back. At that time, Investor C
asked SPITZER about where his money was located. SPITZER told Investor C
that the funds were tied up in investments in securities, that other investors had
also asked for their money during the same time period as Investor C, and that
SPITZER was expecting to receive some funds. SPITZER told Investor C that

13

he would receive 90% of his investment in September 2009.

31.    In October 2009, after not receiving his redemption, Investor C again spoke to SPITZER over the telephone. At that time, SPITZER apologized for not sending Investor C his money. SPITZER stated that the funds were tied up. When Investor C asked SPITZER why he did not have the money if the fund was profitable, SPITZER blamed the economy. SPITZER explained that he had a lot of money that was due by the end of the year, and told Investor C that he would get his money back soon. Thereafter, office staff at Draseena emailed Investor C a schedule of payments to be paid in increments of $58,000.

32.    Investor C received one delayed payment of $58,000 from Draseena. When he did not receive the second installment of $58,000, he had a telephone conversation with SPITZER wherein SPITZER told him that he money was "tied up" but that it was forthcoming shortly. However, to date, Investor C has not received the remainder of his redemption.

### Investor D's Efforts to Obtain Verification of the Investments

33.    Investor D, a resident of New Jersey, has informed law enforcement officers via a proffer that he was a broker whose clients invested in various Kenzie Funds, that he himself invested in certain Kenzie Funds, and that he acted as a consultant for the Kenzie Funds. Investor D stated that for approximately five years he has conducted presentations for potential Kenzie

14

investors, often with Individual 1, and that he was instructed by, among others, SPITZER, about what to tell investors. According to Investor D, he has made approximately 100 presentations for potential Kenzie investors and is responsible for recruiting approximately 50 investors into the various Kenzie Funds. Investor D and his clients have also been unable to redeem their investments in the Kenzie funds in the last approximately nine months. Investor D has been unable to obtain satisfactory validation documentation that the investment funds actually do exist, despite repeated conversations with SPITZER.

34.    According to Investor D, SPITZER told him to tell potential investors that the funds focused on trading world currencies, which, along with stock and bonds, would allow the investors to become "triversified." SPITZER told Investor D that the funds followed a conservative approach, with a focus on cautious risk management.

35.    During presentations to prospective investors, Investor D provided them with various materials he received from SPITZER that Investor D carried in a marketing binder. These materials included, among other things, PPMs for the various funds, and documents reflecting purported historical rates of return for the various funds.

36.    Investor D provided a copy of his marketing binder to investigators.

15

I have reviewed the documents purporting to show the historical rates of return for the various funds contained in the binder. One document, titled Kenzie Traditional Methodologies, sets forth the annual composite performance of the Funds under Draseena. The document purports to show that the composite performance of the Funds has never resulted in a yearly loss. For example, the document reflects composite rates of return in 2005 of 12.88%, in 2006 of 13.54%, in 2007 of 7.90%, in 2008 of 8.92% and in 2009 of 4.52%, as of September 30, 2009. According to Investor D, he obtained this document from SPITZER and provided the document to potential investors during presentations.

37. In November 2009, certain of Investor D's clients attempted to redeem their investments with Draseena and were unsuccessful. Investor D contacted SPITZER to find out why the redemptions were not being met. SPITZER stated that the banks were holding the funds, and clients were not allowed to take early withdrawals of their investments. SPITZER later said that the money would be available in January 2010.

38. The first two weeks of January 2010 passed and Investor D's clients still did not receive their redemption money. Investor D contacted SPITZER. SPITZER gave excuses that the fund administrator was not providing clear information to him about the liquidation of the funds.

39. In February of 2010, Investor D met with SPITZER to discuss the

redemption issues. SPITZER stated that Individual 1 was part of a grand jury investigation. SPITZER further told Investor D that Draseena would need $6 million in order to satisfy all the redemptions requested up to January 2010. Investor D told SPITZER that his clients wanted a validation of the funds. SPITZER told investor D that he would get the validation and that Draseena had $250 million in funds.

40.    In February and March, 2010, Investor D consensually recorded a series of telephone calls with SPITZER in which SPITZER discussed the overdue redemptions and reassured Investor D that the investments were safe, but resisted repeated requests for satisfactory documentation to that effect.[3] During a recorded conversation with SPITZER on February 26, 2010, Investor D reminded SPITZER that SPITZER had promised him a validation of the funds. SPITZER replied, "Yeah, I have it" and agreed to fax it to Investor D. Shortly thereafter, Investor D received a poor quality fax, purportedly from "Isaac," regarding "TLM Subscription." It was dated February 5, 2010, and reflected a balance of $162,198,687. In a subsequent recorded telephone conversation that same day, SPITZER stated that the $162 million "is just a transfer they're showing of the TLM part of it . . . it's not every, it's just that part." He indicated

---

[3]The recorded conversations throughout this affidavit have been summarized based on my (or other agents') understanding of what is being said during the recordings, based on the content and context of the conversations, my experience as a law enforcement officer, and the experience of other law enforcement officers in his investigation.

that the remainder of the approximately $250 million in investor funds was invested with another entity, "Serrano."

41.    In a subsequent conversation on February 28, 2010, SPITZER again reassured Investor D "we've had a period where things have been slow here, but we're seeing you know, return of redemption. You know, things are improving." Investor D asked, "all the principal that everybody has is -- is protected, it's secured from the standpoint of the mix of investments we have, right?" SPITZER replied, "Right." Investor D complained that the previously provided validation was inadequate, characterizing it as "that simple email with -- it just says, 'From Isaac' -- I mean that is so -- so ridiculous. I mean, that -- that to me is just unacceptable. I mean, what's your thoughts on that, Dan? You're running a business here, and you've got all these clients. What's your thought when someone sends you something like that for verification of the assets that you have?" SPITZER stated, "It doesn't -- it's not a verification but in the industry, since day one, that's all you get."

42.    To date, SPITZER has not provided any other verification of the assets underlying the investment funds to Investor D.

**Statements of Purported Investment Activity by Kenzie Associates**

43.    Investigation has revealed that though each Kenzie Fund is a separate Nevada limited liability company or limited partnership, and several

18

corporate entities, namely, Kenzie Financial Management, Kenzie Services, LLC, Draseena Funds Group, Aneesard Management, Co., LLC, and Nerium Management Company purport to be "Trading Manager," "Investment Manager," "administrative manager" or "general partner" of the funds, all the quarterly statements were produced and fund administration was conducted from one office in Clearwater, Florida.  The office manager has been interviewed and has stated that she was primarily responsible for the production of the quarterly investor statements and annual K-1's. She further stated that these documents were mailed to investors from the Clearwater office.  She stated that she prepared these documents from bank statements;  statements from financial institutions where the funds had assets, such as Rydex and Scudder; statements from two offshore entities where the funds purportedly had investments, known as TLM and CAPM, and information she received from SPITZER.

44.    Kenzie balance sheets for 2008 reflect that the vast majority of the Kenzie Funds' investments were invested in the two offshore entities, TLM and CAPM.  The office manager stated that she never saw any source material detailing the nature and location of the investments, or any actual transactions, underlying the figures on the CAPM statements or the TLM statements, and did not know how these entities invested the money. She further related that the funds had been unable to make most of the redemptions requested in the last

19

approximately nine months.  She received complaints from investors seeking

their redemptions and as the year progressed, she became fearful for her safety

and for the safety of the other employees of Draseena as a result of threats made

by disgruntled investors whose redemptions had not been paid.

45.  The accountant whose firm prepared the tax returns for each of the

funds during the period 2002 through 2008 was also interviewed.  In each

instance, these returns reflect that the funds earned income during each of these

tax years.  He stated that he used information that he received from the office

manager in order to prepare the funds' tax returns and did not do any

independent investigation concerning the information he received.  He also

stated that he never saw any source material detailing the nature and location

of the investments, or any actual transactions, underlying the figures on the

CAPM statements or the TLM statements.

46.  SPITZER retained an additional accountant in early 2009 to perform

an audit of the funds' performance in 2008.  The accountant stated that

SPITZER told him that he was interested in having an audit of the funds

performed because some of the investors were concerned about their investments

with him after hearing of the Madoff fraud scheme.  The accountant stated that

he performed the audit using information about the funds that he obtained

through SPITZER, SPITZER'S office staff, or SPITZER'S accountant (referenced

in paragraph 45). This accountant drew the conclusion that the financial statements of the funds presented fairly, in all material respects, the financial position of each of the funds as of December 31, 2008. He admitted that he did not independently confirm the existence of or the balance of funds in the offshore entities CAPM and TLM.

## Uses of Investor Proceeds

47.     The SEC has conducted an analysis of bank accounts associated with the Kenzie Funds from 2004 until approximately March 2010. I am familiar with that analysis based on my review of a declaration prepared by an SEC staff accountant, Wilburn Saylor, Jr., in the case *SEC v. SPITZER*, 10 CV 3758 (N.D. Ill.), which declaration details the uses of the amounts invested with the Kenzie Funds.

48.     As set forth in paragraphs 15, 26 and 38 above, SPITZER represented to investors that the different funds had different levels of risk and different investment strategies, that the funds had never had a losing quarter, that the funds had rates of returns of between $4.52% and 13.54% in the last five years, and in February of 2010, that the funds were worth approximately $250 million.

49.     However, according to the SEC's analysis, from 2004 until approximately March 2010, SPITZER raised approximately $105,875,029 from

approximately 400 investors.  Of that amount, $71,886,926 was used to make

Ponzi payments to investors, $15,208,038 was used to pay operating expenses

of the Kenzie Funds and to make payments to SPITZER himself, and $4,819,024

was used to pay third party business expenses. The return on the approximately

$105 million that investors contributed to the Kenzie Funds was less than one-

tenth of one percent, or approximately $91,000.

50.    The SEC analysis shows that each Kenzie Fund had bank accounts

at Bank of America, Harris Bank and Wachovia Bank.  SPITZER is the sole

signatory on all the bank accounts for each Kenzie Fund.  The SEC's analysis

shows that investor funds were initially deposited into the corresponding

checking account for a Kenzie Fund at either Bank of America or Wachovia

Bank.  However, after that point, despite the fact that each Kenzie Fund

purportedly had a separate–and sometimes conflicting–trading strategy, the

investor funds were commingled and sent, among other places, to (1) an entity

called First Century Fund, LLC; (2) the bank account of an entity called Serrano

in the Netherlands Antilles; and (3) to Kenzie Financial's bank accounts at the

National Bank of Anguilla and the First Bank of Puerto Rico.

51.    The SEC's analysis has also shown that, from 2005 to 2009, less

than one third of the approximately $105 million raised from investors was

actually invested.  Collectively, the amounts that were actually invested did

22

suffer some losses. For example, from September 2005 through December 2008, an entity called Serrano invested $12,632,974 of Kenzie Funds into a structured product created and offered by a French Financial institution, Lyxor Asset Management ("Lyxor"). The SEC's analysis has shown that Serrano's Lyxor investments resulted in $3,800,164 in losses net of dividends.

52. Through its analysis, the SEC determined that the return on the approximately $105 million that investors contributed to the Kenzie Funds was less than one-tenth of one percent, or approximately $91,000.

53. For the period January 2004 to September 2009, the SEC's bank records analysis did not uncover any transfers to or from CAPM and TLM, the offshore entities that purportedly hold a significant portion of the Kenzie Funds' investor assets. The PPM for Serrano, the entity described in paragraph 50 above, reflects that CAPM is the investment manager for Serrano. As stated above, Serrano's investments resulted in a loss.

54. I have reviewed the Kenzie Funds' balance sheets for June 2009. Those balance sheets claim that the Kenzie Funds collectively had total assets under management of approximately $249 million. In reality, the SEC's analysis shows that, as of June 2009, the Kenzie Funds only collectively had $4,101,807 in their bank accounts.

**Spitzer has closed the Kenzie offices**

23

55.    The office manager of the Clearwater, Florida office stated that on or about June 30th, 2010, SPITZER terminated all of the employees in the office and directed them to box up all the contents of the office and back up the computer systems. The office manager then left the packed contents of the office on the premises, locked the office, and mailed the keys to SPITZER at an address in Barrington, Illinois.

56.    SPITZER also maintained a small office on St. Thomas in the U.S. Virgin Islands.  The landlord of the St. Thomas office was interviewed and stated that the office was vacated on or about May 28, 2010.

## Conclusion

57.     In brief summary, there is probable cause to believe that, on or about

May 4, 2009, SPITZER devised and participated in a scheme to defraud and to

obtain money by means of materially false and fraudulent pretenses,

representations and promises, and for the purpose of executing, and attempting

to execute, the scheme to defraud and to obtain money by means of material

false and fraudulent pretenses, representations and promises, SPITZER caused

to be delivered by U.S. mail a quarterly statement to Investor C at his address

in Riverwoods, Illinois, purporting to show that Investor C's account in the Three

Oaks Senior Strength Fund had a balance of $302,101.68 as of March 31, 2009,

in violation of 18 U.S.C. § 1341.


FURTHER AFFIANT SAYETH NOT.


_____

Natalie Reda
Postal Inspector
U.S. Postal Inspection Service


Subscribed and sworn to
before me this 2nd day of August, 2010

_____
United States Magistrate Judge


25

Notice of Presentment

This is notice to the court that I Alfred Gerebizza have mailed and signed original copies, with a total number of pages __10__ of duly verified sworn Declaration of facts and Peremptory rebuttal to the public record of docket no. 10 CV 3051 on October tenth via UNITED STATES certified registered mail no. 7013 1710 0001 9528 5039 to the NORTHERN DISTRICT FEDERAL COURT EASTERN DIVISION, two-hundred nineteen South Dearborn Chicago Illinois state.

Without prejudice U.C.C. 1-308

Alfred Gerebizza

General guardian

General executor

Beneficiary



under reserve with the copy claim

Affllgga 322502010    agent.

Not a corporation but living soul

October tenth two thousand thirteen

Certificate of Service

Case No. 10-CV-3051

This is to certify, that I Alfred Gerebizza, a living soul, not a corporation or a "thing" have mailed via THE UNITED STATES POSTAL SERVICE on October tenth, two-thousand thirteen notarized and signed Declaration of Facts and Peremptory rebuttal being duly verified and sworn to the following:

Thomas G. Bruton

Clerk of the Court

Two-hundred nineteen South Dearborn

Chicago Illinois state


Nancy Temple

Five-hundred forty two South Dearborn

Chicago Illinois state


John George Junior

Five-hundred forty two South Dearborn

Chicago Illinois state


Without prejudice U.C.C. 1-308

Alfred Gerebizza

General guardian

General executor

Beneficiary

under reserve with the copy claim
Afllope 322502010   agent.
Not a corporation but a living soul
October tenth two thousand thirteen